Opinion of the Court.
IN the year 1805, John Jouitt sold to Charles and Peter C. Buck, a mill, distillery and small tract of land, and agreed to furnish and deliver to said C. and P. C. Buck, in said mill, for the term of ten years, fifty barrels *230 of rye and one hundred barrels of corn, by the first day of January in each year; and Charles and Peter C. Buck stipulated to deliver, forHhe said term,, to Jouitt, fourteen hundred gallons of whiskey, and one hundred dollars ip merchandize, in every year. Jouitt executed his bond, binding himself to convey the estate, and C. and P. C. Buck executed to Jouitt their several notes for each instalment, one of which, now the subject of controversy, with its endorsement, reads as follows, to wit:
“ We, Charles Buck and Peter C. Buck, ofWoodford county, promise to pay John Jouitt, of said county,, fourteen hundred gallons of good merchantable whiskey, to be delivered at Buck’s distillery, near the mouth of Craig’s creek, in said county, in good, tight casks, none to exceed a double barrel in size, and one hundred dollars’worth of merchandize, on or before the_ first day of March 1814. Witness our hands and seals, the 7th day of August 1805.
Teste, (Signed) CHARLES BUCK, [Seal.] H. Bowmau, PETER C. BUCK, [Seal.] Lewis Craig, Jr.”
“Jouitt has no right to demand the whiskey, nor goods, until he has delivered 50 barrels of rye and 100. barrels of corn at Buck’s mill, which is to be done before the first day of January 1814.
Teste, (Signed) JOHN JOUITT. Lewis Craig, Jr.”
Jouitt filed this bill, alleging that all the notes were to the same effect; that for several years he resided near the mill aforesaid, and continued to deliver the rye and corn, not at the time stipulated, but at different periods during the winter, with the assent of the said C. and P. C. Buck, and received the whiskey and merchandize in return; that he sold out his possessions in Woodford, and moved to Bath county, near sixty miles distant, before some of these instalments were paid; -and after his removal, and more especially as he had sold his farm in Woodford, it became very inconvenient, and in one oy two years impracticable, owing, to the scarcity of rye, to furnish the quantity he had engaged; that he deposited castings and iron in the hands of his. agents in Woodford, to be disposed of, for the purpose-of purchasing the necessary quantity of grain, which those agents, from various causes, accidents and casu-. *231 alties, failed to do. He further States, that finding it difficult to perform his part of the contract, he had made efe'ry reasonable ■ proposition to vary the stipulations, fijd to make reas^naWe deductions to C. and P. C. for disappointments and failures; but they, availing "themselves of his misfortunes and failures, refused to accept any equivalent, but insisted on the letter of their contract, and would pay nothing more, but intended to keep the mills and estate for nothing. He insists, as he has no remedy at law, that equity may take cognizance of his case, and after making every reasonable allowance to the opposite party, for disappointments and price of the grain, the balance may be decreed to him in kind, or a compensation therefor.
C. and P. C. Buck answer, admitting the contract. They deny that they ever dispensed with its spirit or its letter; aver that the previous condition on the part of Jouitt, to be performed each year, was the chief inducement to them, as out of the grain delivered the whiskey was to be made. They deny that grain sufficient could not be had each year; allege that they kept their mill empty, and declined making other contracts for grain, to make room for that to be delivered by Jouitt, in the expectation thereof; in consequence of which, their mills and distillery were frequently idle, and their laborers wanted employment,, .whereby they sustained loss. They fufthey.'allege, that Jouitt misrepresented the strength of the stream and value of the. mills, and they proved less valuable; so that what they had paid was their full value. They allege that the contract ought to be rescinded, and offer to do so on equitable terms; and contend, that if Jouitt will not accept a rescisión, his bill, for want of equity, may be. dismissed.
The court below determined thát Jouitt was entitled to relief, and enrpaimelled a jury to ascertain the value of the grain to be delivered by Jouitt, and damages for the failure, in not delivering it, and the value of the whiskey which was to have been delivered by G. and Pi C. Buck, at the date of delivery. After these assessments were made, that court deducted one from the other, and a balance was left in favor of Jouitt, of about $4Q,0, which was decreed to him with intpjfet, From this decree C. and P. C. Buck have appealgylNy ’ .
l/We cannot perceive on what'pfinciple.fhb.^e.cree can he sustained. It cannot be admitted,' that wlieu a *232 precedent condition is not fulfilled, and the right of ac'-> tionis gone at law, equity will assume jurisdictionof the controversy, and relieve from the consequences of the complainant’s own- failure. How far equity might go in relieving from such condition, when it was not complied with entirely by accident, or circumstances not under the control of the party on whom the precedent condition lay, we need not now enquire; for, even from the face of the bill, there were no such circumstances in this case. The sale of Jouitt’s farm in Wood-ford, which took from him the means of raising the grain near at hand, and his removal to a distance, all which was brought about from motives of his own, seems to have furnished the only apology for his resort to a court of equity, except that rye and corn, for one or two years, were scarce. This latter excuse, however, does not seem to be true in fact. We can then discover nothing which can sustain the jurisdiction of a court of equity.
It is true, as this is a contract for real estate, equity is entitled to jurisdiction, either to enforce or set it aside. Neither of these courses, however, is attempted by the complainant below. But he has attempted barely to enforce a fractional part, and compel the payment of one instalment, which, according to his own account, was irrecoverable atlaw, without permitting the, chancellor to get hold of the whole case. It, then, stands on the same footing with a bill in equity to enforce any other contract, for which the remedy at law, by proper averments, is plain and easy; and if those averments of performance of the precedent condition cannot be supported, no recovery can be had at law. In such case, if there is a right to recover, the law will give remedy. If there is no right at law, equity, which follows the law, cannot give either right or remedy.
This conclusion-renders it unnecessary to notice the questions made in the details of the decree and progress of the cause.
The decree must he reversed with costs, and directions to the court below to dismiss, the bill with costs.